**WHITE FURNITURE COMPANY, a corporation, v. R. S. MATHER**

17 So. (2nd) 118
October 8, 1943
On Rehearing Granted February 29, 1944

June Term, 1943
En Banc

*W. W. Judge,* for appellant.
*B. F. Brass,* for appellee.

PER CURIAM:

Suit was filed by White Furniture Company to enforce an alleged equitable lien upon certain household furniture in the possession of one Ashley and wife, which had been purchased by them from Mather-Hodgkins, Inc., under retain title contract. The gist of the bill of complaint was that a subsequent transaction, whereby Mather-Hodgkins, Inc., had placed the conditional sales contract with a bank with instructions to collect installments due thereon and remit the same to White Furniture Company in liquidation of a pre-existing debt, amounted to a partial equitable assignment of the contract, and amounts due thereon, to the extent of the pre-existing debt.

The answer filed by appellee, who had become the purchaser of the assets of Mather-Hodgkins, Inc., at bankruptcy sale subsequent to the above transaction, denied that the transaction constituted an equitable assignment, and denied the authority of the officer who purportedly represented Mather-Hodgkins, Inc., to validly bind the corporation in the matter.

Testimony was taken before an examiner appointed by the court. The chancellor found in favor of the defendant and dismissed the bill. The appeal is from the final decree.

Questions of fact only are presented by the appeal. The burden of proving the nature of the transaction, and of the authority of the officer to bind the corporation, rested upon the appellant, under the pleadings. The failure of the appellant to sustain either one of the issues presented, by a preponderance of the evidence, would be fatal to recovery by the appellant. The chancellor undoubtedly found that the appellant had not sustained the burden of proof on at least one of these issues; otherwise, he would not have found that the equities of the case were with the defendant. The question, therefore, is whether the chancellor has so clearly erred in his conclusions on the facts presented as to call for a reversal by this Court.

Even though the testimony was taken before an examiner, and findings on such testimony will not be given the same effect as the verdict of a jury, the conclusions of the chan-

cellor on testimony so taken may not be reversed, unless it clearly appears that he has erred in such conclusions. Lluis v. Lluis, 91 Fla. 706, 108 So. 671; Weaver-Loughridge Lumber Co. v. Kirkland, et ux., 99 Fla. 426, 131 So. 784.

There is ample evidence to sustain the decree. This court is unable to say that the appellant has sustained the burden of proof cast upon him by the pleadings. The decree, therefore, should be affirmed.

It is so ordered.

BUFORD, C.J., TERRELL, BROWN and SEBRING, JJ., concur.

CHAPMAN, THOMAS and ADAMS, JJ., dissent.

ON REHEARING

THOMAS, J.:

The predominant fact among those from which this litigation grew was a letter addressed to a bank and signed "Mather-Hodgkins, Inc. by H. B. Hodgkins Secretary-Treasurer." Upon its construction our decision must depend.. The missive read: "We are handing you *herewith,* retain title contract . . . executed by Nellie I. Ashley and R. E. Ashley to the undersigned. . . ." There followed a statement of the amount unpaid and the sum due each month, $200.00. The only remaining paragraph advised the bank: "You are hereby authorized and instructed to remit all monthly payments received by you on the . . . contract to . . . [the attorney] for White Furniture Company, . . . against his receipt, until there [sic] payments reach a total of $1,800.00, at which time you are to return the above mentioned retain title contract to the undersigned." At the foot was the statement signed by the addressee: "We *hereby* acknowledge receipt of the . . . retain title contract, and note the instructions contained in above letter." (Italics furnished.) This communication, believe a majority of the court, operated to assign an interest in the contract. That the letter was written and delivered is not disputed, but there is sharp difference of opinion between the adversaries about the interpretation to be ascribed to it. Before proceeding, however, to a discussion of our construction and a reference to applicable law we will throw upon the

transaction such light as may be gained from the circumstances prompting it and the events occurring subsequently.

Signer of the letter was a retail furniture dealer and in the course of trade it had sold wares to the Ashleys, had taken their retain title contract for the unpaid balance of the purchase price. The seller had become indebted to the appellant, White Furniture Company, a wholesaler, and to assure the payment of its account wrote the letter. Later the author of the letter became bankrupt and the referee entered an order in that proceeding holding the communication we have described an equitable assignment and declaring the claim of the appellant secured to the amount of $1401.00, the remainder of the account mentioned in the letter after deducting $399.00 paid meanwhile by the Ashleys.

A bill was filed by the appellant against the Ashleys and R. S. Mather urging these and related facts as support for a decree that a lien existed on the goods bought by the Ashleys from Mather-Hodgkins for $1401.00 upon the theory that the letter we have described was a partial assignment. It was prayed that the lien be foreclosed and that any right of R. S. Mather be subordinated to plaintiff's claim.

The Ashleys deposited in the registry of the court $1401.00 and paid to R. S. Mather, because of his purchase of the bankrupt's property, approximately $1450.00 whereupon it was stipulated that the former be dismissed as parties to the suit and that the retain title contract be surrendered. The controversy proceeded then between the appellant and R. S. Mather for the stake of $1401.00 on deposit with the court.

R. S. Mather being now introduced we turn to his answer for an understanding of the position in the litigation assumed by him and the rights he asserts. He challenged the authority of H. B. Hodgkins to execute any assignment to the bank and denied that the letter constituted an instrument of that kind. He had, so he alleged, purchased the "Bankrupt's estate from the trustee in bankruptcy" receiving a bill of sale containing "certain terms and conditions." He denied the inferiority of his claim. The bill of sale recited it was executed "subject to any security, preference, pledge or lien . . . [of appellant] it

being further understood and agreed that said sale and this instrument [do] not in any manner recognize the existence or validity of any such security, preference, pledge or lien in connection with the claim of said [plaintiff], and that the said party of the second part shall at all time [sic] have the right to question, oppose and contest in every way any claim or claims for any security, preference, pledge or lien. . . ."

Thus, briefly, the issues formed were the effect of the letter to the bank and the authority of the secretary-treasurer to sign it. The contest, at the time of the final hearing, had become one for the acquisition of the deposited fund; the contestants, the original party, White Furniture Company, and the purchaser at the bankruptcy sale. The two issues we have defined are the ones recognized in the original opinion, the gist of which was that the burden cast upon appellant by the traverses in the answer had not been met, and that the conclusions of the chancellor, supported by the presumption of their correctness, should be upheld.

It seems fitting now to recount the testimony particularly as it pertains to the second proposition, namely, the right of the officer of the corporation to act as he did.

An attorney representing the appellant visited the store of Mather-Hodgkins, Inc., to arrange for the surrender to his client of certain furniture sold to the latter, but not paid for. The articles were eventually identified and delivered to the attorney, and the buyer was given credit for the cost price. The negotiations were conducted between the attorney and H. B. Hodgkins, secretary and treasurer of the corporation. The attorney then requested that some security be given for the balance of the account. To this the officer of the corporation acceded, stating that he had a conditional sales contract from the Ashleys which could be used as security. It was agreed that the contract be placed in the bank with instructions to pay $1800.00 to the appellant. The attorney was asked by Hodgkins to write a letter to the bank setting forth the arrangement and giving the proper instructions to effectuate it. When the letter was prepared the attorney and Hodgkins took it to the bank, discussed the matter with the bank president, and Hodgkins signed it there.

134

Pursuant to this arrangement the Ashleys made two payments to the bank, and the bank remitted them to the attorney.  After one remittance of the assignment was again recognized in a letter to the bank, signed also "Mather-Hodgkins, Inc. H. B. Hodgkins," stating that the Ashleys had requested the day of instalment payments to be changed from the 15th to the 28th of each month and requesting the bank to act accordingly.  What we have just related is a résumé of the testimony offered by the plaintiff.

The defendant's sole witness was J. M. Mather who described himself as "Salesman and Sales Manager" of the corporation.  His wife owned half of the business but took no active part in the company or its management.  The witness "represented her and watched over her interests," but neither he nor his wife had ever attended a stockholders' or directors' meeting.  He was a creditor of the corporation and, according to his account, collaborated with the secretary and treasurer in the conduct of the business.  He testified he was consulted about the first letter to the bank, transmitting the Ashley contract, and objected to its execution, telling Hodgkins he "would not allow it" and also reminding Hodgkins he represented his wife "as half owner of the business, and [himself] as the largest creditor. . . ."  He said he informed Hodgkins that inasmuch as the Ashley's contract had been placed with the bank for collection he might allow some of the proceeds paid to appellant "but under no circumstances should he sign an assignment."  His protest was prompted by the conviction that such an arrangement would be "an act of bankruptcy."

It is a strange commentary that, according to this very witness, the contract was assigned a short time afterward "as security for a cash loan to R. S. Mather," the appellee, a carbon copy being used "because of the time of day when the loan was made and security given did not conform to the banking hours."  Presumably he meant that the original contract could not be obtained because the bank where it was placed was closed.

The positions of the witness seem inconsistent.  At the time of the second assignment, to appellee in whose behalf the witness was testifying, a copy typed by him was used and

the instrument was executed by "Mather-Hodgkins, Inc. H. B. Hodgkins, Secretry and Treasurer." Thus an assignment of a copy was acceptable while an assignment of the original, both executed alike, is challenged. Both occurred before the corporation filed its petition in bankruptcy.

It is but trite to observe that this court when entering upon a review of the chancellor's ruling indulges the presumption that his conclusion was correct even when the testimony was introduced before an examiner; also that the decision will not be disturbed where there is conflicting evidence and some of it supports the decree. Lluis v. Lluis, 90 Fla. 706, 108 So. 671. If the appellant overcomes the burden he encounters because of the presumption and shows clearly that error occurred the appellate court will not, however, hesitate to order a reversal. It was written in the original opinion that two questions of fact were present, i.e., the efficacy of the letter we have described and the authority of the secretary-treasurer to sign it. It seems to a majority of the court that decision of the first can hardly be said to depend on testimony which conflicts with other testimony, leaving the chancellor the choice of believing one version or the other. We have said there was no dispute about the letter having been written and given to the bank.

It was, though, contended that the Ashley contract was not transmitted with the letter, but had been placed with the institution long before for collection. We surmise that this was an effort to defeat the theory that an assignment was intended to be created at the time and to show, on the contray, that there was only an intent to divert to the appellant some of the monies then being paid. The language of the letter itself which we have quoted at the outset seems to confute appellee's contention. To repeat, it contained the statement: "We are handing you [the contract] herewith" and the instruction to the bank to return it when a specified amount paid on it had been remitted to appellant. The addressee, by its president, appended the words: "We hereby acknowledge receipt of the . . . retain title contract. . . ."

It appears to us to have been the clear intention of the parties then and there to deliver to the bank a contract upon

which money was due and to be paid periodically, upon condition that it be returned immediately those payments had reached a certain amount and had been remitted to the appellant. The phraseology was unambiguous, and the language used belies the thought that the contract was already in the hands of the bank and the plan was only one for a temporary diversion of funds currently being received.

The remaining point involves the authority of the secretary-treasurer. It is really narrower than that; it involves his authority to act over the protest of J. M. Mather. The question is immediately suggested: What control could he have had over this corporate officer? Admittedly he owned no stock; he held no office; he attended no stockholders' or directors' meetings. Positively, he was a creditor, the husband of a stockholder, a salesman or sales manager. Evidently the wife's name was Madeline Mather, but it is not clear to us what relation J. M. Mather bore to R. S. Mather whose defense he so stoutly advances. The wife of the witness was quite competent to hold stock in the corporation and in that capacity could avail herself of the laws protecting and preserving her rights as such. Whether she ever resorted to any of the remedies afforded her for protection against any mismanagement of the corporate affairs is not disclosed in the record. We are not conscious of any recognition which need be given the husband of a stockholder simply because of that relationship or which must be shown a salesman or sales manager. Nor are we aware of the right of a creditor to dictate to an officer the course he should follow from time to time. Like a stockholder he had the advantage of legal methods for the protection of his claim.

The law recognizes the secretary and treasurer, and his duties are fairly well defined. Exercise of them was not subject to the will or judgment of the witness, whose interest we have described.

We think that determination of the second question should also be adverse to appellee's contention, and the conclusion is based upon the testimony of appellee's own witness.

We conclude that plaintiff had an assignment which entitled it to the relief sought so the decree is reversed.

Reversed.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN and ADAMS, JJ., concur.

SEBRING, J., dissents.